Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582

FILED
CLERK, U.S. DISTRICT COURT
5/2/23
CENTRAL DISTRICT OF CALIFORNIA
BY: _____pk_____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JORGE ALEJANDRO ROJAS,

        Plaintiff,

v.

FRANKLIN LEGAL GROUP, PC, THOMAS MOORE, ADVOCATE DEBT RELIEF, LLC, JOSHUA VALENTINE, START NEW SETTLEMENT, LLC, and DEAN SUNDRLA,

        Defendants.

Case No. 2:23-cv-02837-DSF-AS

Judge Dale S. Fischer
Magistrate Judge Alka Sagar

**AMENDED COMPLAINT FOR:**

1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, AND IMPLEMENTING REGULATIONS

    Plaintiff, Jorge Alejandro Rojas, files this Amended Complaint[1] under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and its regulations, against Defendants Franklin Legal Group, PC, ("Franklin Legal"), Thomas Moore ("Mr. Moore"), Advocate Debt Relief LLC, ("Advocate Debt"), Joshua Valentine ("Mr. Valentine"), Start New

---

[1] Plaintiff files this Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(A). Defendants Ace Customer Services, LLC, and Anthony Pascarella are terminated from the case and dismissed without prejudice. Defendants Franklin Legal Group, PC, Thomas Moore, Advocate Debt Relief LLC, Joshua Valentine, Start New Settlement, LLC, and Dean Sundrla, are new Defendants.

Settlement, LLC ("Start New"), and Dean Sundrla ("Mr. Sundrla"), collectively "Defendants", and alleges based on personal knowledge and information and belief, as follows:

## INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227, and its implementing regulations, 47 C.F.R § 64.1200.

3. This case involves a campaign by Defendants to obtain business via itself or affiliates making telemarketing calls concerning credit and debt resolution services. Defendants also engage in the practice of providing incorrect company information on the telephone, causing a TCPA plaintiff to sue an entity which is not making the telephone call.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct business in the state of California. Specifically, the Defendants conduct significant business in the State. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

6. Plaintiff received a telephone call from a 657-area code, which is partly within the Los Angeles and Orange counties. When Plaintiff spoke to a representative during

one of the telephone calls, Plaintiff was told they were located in a call center in California. Moreover, the voicemails left to Plaintiff stated that they are calling from an "Anaheim office." Filing in this District is therefore appropriate.

7. Venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

8. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.

9. Defendant Franklin Legal Group, PC, ("Franklin Legal") is a California entity, with a principal address of 3186 Vista Way Ste 300, Oceanside, CA 92056, and an agent for service of process of Thomas Moore located at the same address.

10. Defendant Thomas Moore ("Mr. Moore") is the sole corporate officer of Franklin Legal, and is the CEO, Secretary, CFO, and Director, and is located at the same address.

11. Defendant Advocate Debt Relief LLC, ("Advocate Debt") is a Delaware entity, with a principal address of The Green Ste 11204 Dover, DE 19901, and a registered agent of Joshua Valentine, located at 27599 Riverview Center Blvd, Ste 201, Bonita Springs, FL 34134.

12. Defendant Joshua Valentine ("Mr. Valentine") is, according to the records of the Florida Secretary of State, where Advocate Debt is also registered, a member of Advocate Debt, and is located at the same registered agent address.

13. Defendant Start New Settlement, LLC ("Start New") is a Michigan entity, with a registered agent of Dean Sundrla, located at 5366 Plainfield Ave, Ne, Ste B, Grand Rapids, MI, 49525. Start New is also registered with the Massachusetts Secretary and identifies Dean Sundrla as the manager.

14. Defendant Dean Sundrla ("Mr. Sundrla") is, according to records of the Massachusetts Secretary, is a manager of Start New.

15. Defendants are each a person as defined by 47 U.S.C. § 153(39).

16. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

17. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

18. The TCPA makes it unlawful to make calls using an automatic telephone dialing system ("ATDS") without the call recipient's prior express consent.

19. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

20. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

21. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or

investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

22. The TCPA's definition of unsolicited advertisement applies to "means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

23. Under the TCPA, an individual may be personally liable for the acts alleged in the Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (*emphasis* added)

24. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

25. Individual Defendants directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

26. Employees can be held liable in TCPA actions for unlawful conduct.

27. The individual defendants in this case personally participated in the actions complained of by: (a) personally selecting the phone numbers that would be called; (b) approving the scripting that would be used on the calls; (c) selecting and managing the

dialing equipment or supplier of the same used to make the calls; and (d) personally paying for the calls.

28. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

29. On May 9, 2013, the FCC determined that it was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

30. [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

31. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* At 6587 n. 107.

32. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating

that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* At 6593.

33. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id*. at 6586 (¶ 34).

34. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

35. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

36. The TCPA's implementing regulations require that the caller provide the called party the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone or address where the person may be reached. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

## FACTUAL ALLEGATIONS

37. Defendant Start New Settlement, LLC, has been sued for TCPA violations in the past. *See Salaiz v. Start New Settlement, LLC,* 3:23-cv-00087 – W.D. Tex.

38. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582. The phone number is not associated with a business and is used by Plaintiff solely.

39. Plaintiff is the account holder and customary user of his phone number.

40. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.

41. Plaintiff registered his phone number on the Do Not Call list to obtain solitude from invasive and harassing telemarketing calls. The calls prevented Plaintiff from using his phone for legitimate purposes.

42. Plaintiff also alleges that Defendants may have made other telephone calls prior to the Call 1 identified below, which will be identified further in discovery.

43. **Call 1.** On or about April 10, 2023, at 2:28 PM Chicago time, Plaintiff received a telephone call from Defendants, from 657-220-8192.

44. Plaintiff missed this call.

45. Defendants left a pre-recorded voicemail, of a female, advertising the services of the Defendants financial loan hardship program. The voicemail provided a call back number of the same number of that which called Plaintiff.

46. The telephone number which called Plaintiff is reported online as being a telemarketer. https://lookup.robokiller.com/p/657-220-8192.

47. Plaintiff called the telephone number back on April 12, 2023 and spoke to an "Oshin" who provided a website of https://www.signatureservicing.com and a call back number of 714-709-4241.

48. Oshin represented during the telephone call that she worked for Signature Servicing.

49. Oshin does not actually work for Signature Servicing.

50. The calling party in these calls does not work for nor is authorized to market the services of Signature Servicing.

51. Plaintiff sought Oshin to e-mail him the program information from a company email address in order to verify the identity of the caller, but Oshin refused.

52. The telephone number provided as a call back number is reported online as being a telemarketer. https://800notes.com/Phone.aspx/1-714-709-4241.

53. **Call 2.** On or about April 13, 2023, at 3:35 PM Chicago time, Plaintiff received a telephone call from Defendants, from 657-220-8209.

54. Plaintiff missed this call.

55. **Call 3.** On or about April 13, 2023, at 3:35 PM Chicago time, Plaintiff received a telephone call from Defendants, from 657-220-8209.

56. Plaintiff missed this call.

57. Defendants left a pre-recorded voicemail, of a female, advertising the services of the Defendants financial loan hardship program. The voicemail provided a call back number of the same number of that which called Plaintiff.

58. A rough transcription of the voicemail is: "Hello please listen to this important message today is Thursday, April 13 this is a message from the financial hardship loan center located in Anaheim this is a final attempt to reach you regarding a $36,000 financial hardship loan that can be approved today due to inflation and rising costs we offer same-day approval with no credit check this loan can be used for any purpose including paying off debt unexpected bills or personal use your unique application code is 67594 please call our Anaheim office immediately at 657-220-8209 again that number is 657-220-8209 thank you…"

59. The voicemail left by the April 13th calls was substantially similar to the April 10th call.

60. The telephone number has been reported to be making other telemarketing calls to other individuals. https://lookup.robokiller.com/p/657-220-8209.

61. The voicemail left by the Defendants did not identify the Defendant by name, and Plaintiff had to make follow up investigation phone calls in order to identify the Defendants.

62. **Call 4.** On or about April 25, 2023, at 2:00 PM Chicago time, Plaintiff received a telephone call from Defendants, from 844-365-7318.

63. The caller left a pre-recorded voicemail of a female sounding voice which was pre-recorded and/or artificial with a rough transcription of "Hello please listen to this important message today is Tuesday, April 25 this is a message from the financial hardship loan center this is a final attempt to reach you regarding a $36,000 financial hardship loan that can be approved today due to inflation and rising costs we offer same-

day approval with no credit check this loan can be used for any purpose including paying off debt unexpected bills or personal use your unique application code is 11734 please call our office immediately at 844-365-7172 again that number is 844-365-7172 thank you…"

64. The telephone number has been reported as making telemarketing calls to other individuals. https://lookup.robokiller.com/p/844-365-7318.

65. When Plaintiff commenced this action, he began it against Ace Customer Services LLC and its officer. Dkt. 1. This is because Oshin stated during the telephone calls a website and name of a company that were not actually them. Following commencing this action, the corporate officer of Ace Customer Services reached out to Plaintiff and informed him that the calls were not made by Ace Customer Services.

66. In a May 1, 2023 email from Ace Customer Services officer, he stated in part "I have heard about this scam before. I am not sure if this site is a company who is attempting to get consumer's personal information or a lead generation company. We have tried calling that number in the past and every time we call it they tell us they are from a different company. That phone number is listed on line as a scam site. We placed a disclaimer on our website some time ago informing consumers that if they received a suspicious call they should contact my compliance department before giving anyone their personal information. We do not market this way.  I am doing research on that company so we can send them a cease and desist. Once I find out who they are I will share that information with you and help you in any way."

67. Plaintiff, on May 2, 2023, called 657-220-8192, which is the telephone number from the first call, and following going through the automated voice prompts, was ultimately connected with a "David" who then connected Plaintiff to a "Daniel" who stated he was with Advocate Debt Relief and Start New Financial, and that they were providing debt relief services with Franklin Legal Group.

68. Daniel ultimately did a soft pull of Plaintiff's credit file, with Plaintiff's authorization.

69. Daniel e-mailed Plaintiff during the telephone call, with information concerning the debt relief services being offered by Defendants.

70. The e-mail stated in part "Advocate Debt Relief specializes in identifying which programs will best suit our individual client's needs and goals when it comes to getting out of debt. Based on our conversation, the program that will best achieve your goals is the debt settlement program offered through Franklin Legal Group."

71. The e-mail came from an address of Dlampinen@advocatedebtrelief.com and was electronically signed by http://e.startnewfinancial.com.

72. Defendant Franklin Legal and its officer would benefit from the telephone calls made by the other parties, because those other parties would make telemarketing calls on their behalf in order to retain Franklin Legal to perform debt relief and consolidation services.

73. Defendant Franklin Legal would utilize any of the leads provided by the other Defendants in order to make money.

74. Defendant Franklin Legal should have known that the other Defendants were engaging in illegal telemarketing and discontinued its relationship with those entities.

75. The email from Daniel, which came from a domain operated by Advocate Debt Relief, and signed by a domain operated by Start New Settlement, demonstrates the liability of those two entities, as Daniel is the individual Plaintiff was ultimately connected to during the call back.

76. The footer of the https://www.advocatedebtrelief.com website includes a company name of Advocate Debt Relief, LLC and an address that matches that registered with the Florida Secretary of State.

77. The Franklin Legal Group website, a link to which was provided in the e-mail from Daniel, includes the following statement in the "About" section, "Welcome to Franklin Legal Group, the caring team of debt relief specialists headquartered in Grand Rapids, Michigan, that exists for the sole purpose of addressing the invasion of debt in

American households and ensuring the most beneficial shot at financial freedom for all."

78. Franklin Legal Group's reference to the "caring team of debt relief specialists headquartered in Grand Rapids, Michigan" refers to Start New Financial, whose Contact Us page, https://www.startnewfinancial.com/contact, includes a Grand Rapids Michigan address.

79. Defendant has had the necessary minimum contacts with this forum. The caller stated they were located in Anaheim during the voicemails, and California when speaking to Plaintiff during the first call back. *Branham v. ISI Alarms, Inc*., 2013 U.S. Dist. LEXIS 124933, *28 (E.D. N.Y. Aug. 30, 2013) (holding that the defendants should have anticipated that the use of a system "to call a New York cell-phone number could subject them to being hauled into court in New York.")

80. Defendants initially provided incorrect information to the Plaintiff during the initial call back – in order to attempt to evade TCPA liability. Only during the second call back and after pulling Plaintiff's credit history was Plaintiff able to confirm the true identity of the caller.

81. This failure to identify also demonstrates the conduct alleged herein was done in a knowingly and/or willful manner.

82. Plaintiff alleges that Defendants use an ATDS for reasons including the fact that so many other individuals are receiving the same phone call.

83. Courts have relied in part on the "the general tort rule that 'corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'" *Universal Elections*, 787 F. Supp. 2d at 416 (internal citations omitted); *see also Am. Blastfax, Inc*., 164 F. Supp. 2d at 898.

84. The individual party Defendants engaged in the operation of the telemarketing scheme.

85. The conduct alleged in this action was made willful and knowingly, including for example failing to fully disclose identity during the call.

86. The TCPA requires telemarketers to provide training to their employees, contractors, etc., and Defendants have failed to properly train the same.

87. Defendants' phone call utilized an Automatic Telephone Dialing System (ATDS) without obtaining Plaintiff's prior express written consent.

88. Defendants' phone call left an automated or pre-recorded message on Plaintiff's telephone.

89. Plaintiff did not have a prior business relationship with Defendants.

90. Defendants did not have any consent to call Plaintiff.

91. Defendants are not an organization exempt from the TCPA.

92. Defendants' calls to Plaintiff were made for the purpose or intention of being a "telephone solicitation."

93. Defendants' calls to Plaintiff were made for the purpose or intention of being an "unsolicited advertisement."

94. Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.

95. Plaintiff alleges that Defendants train their affiliates to avoid divulging too much information to leads and customers to evade TCPA liability.

96. The impersonal and generic nature of the calls demonstrate Defendants utilized an ATDS and/or a pre-recorded voice in making the calls.

97. In total, Defendants and/or their affiliates placed at least four (4) telephone solicitation calls to Plaintiff.

98. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

99. Defendants have a pattern and practice of failing to comply with the TCPA.

100. The foregoing acts and omissions were in violation of the TCPA.

101. Defendants are engaging in violations of the TCPA to get business.

102. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

103. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

104. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

105. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

106. Plaintiff is also entitled to an award of costs.

107. Defendants' calls were not made for "emergency purposes."

108. Defendants' calls to Plaintiff were made without any prior express written consent.

109. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

110. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

111. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

112. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

**COUNT 1.** Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

113. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

114. Defendants or one of their affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least four (4) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

115. Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each.

116. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $6,000.00 plus costs and any other remedy deemed appropriate.

**COUNT 2.** Violation concerning Identification of Sellers and Telemarketers, 47 C.F.R. § 64.1200(d)(4)

117. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

118. The TCPA's implementing regulations require that the caller provide the called party the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone or address where the person may be reached. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

119. Defendant violated this provision by failing to identify itself as the Defendants in their telephone calls.

120. By placing at least FOUR telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, Defendant, violated 47 U.S.C. § 227©(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

121. Defendants' first violation of the TCPA implementing regulations by calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2).

122. Defendant second violation of the TCPA implementing regulations is failing to properly identify themselves. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

123. The foregoing acts and omissions of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least eight (8) violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, inter alia, failing to comply with the Do-Not-Call Registry and failing to properly identify themselves, during each call.

124. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

125. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

126. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5).

127. Plaintiff's telephone number has been registered on the Federal Do Not Call Registry since at least 30 days prior to the calls described above.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendant, in an amount of $12,000.00 plus costs and any other remedy deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and/or severally, in an amount to be more fully determined at trial and/or following discovery, but at least $18,000.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered,

B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C),

D. Statutory damages of $500.00 per violation for every violation of 47 U.S.C. § 227(c), and the TCPA's implementing regulations,

E. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(c)(5),

F. All reasonable attorneys' fees, witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,

G. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,

H. Leave to amend this Complaint to conform to the evidence subsequently obtained,

I. Any other relief this Court deems proper.

Respectfully submitted,

Dated: May 2, 2023

JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582

-17-

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this filing will be sent to the Defendants being terminated from the case to their last known address, and a copy of this filing will be sent to the new Defendants via service of process and/or request to waive service of process to their last known address.

Dated: May 2, 2023

JORGE ALEJANDRO ROJAS